**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANTHONY BANNIGER,<br>Plaintiff<br>v.<br>JACKLYN TALASKY, *et al.*<br>Defendants. | CIVIL ACTION NO. 3:25-CV-00531<br>(MEHALCHICK, J.) |

## MEMORANDUM

Before the Court are Plaintiff Anthony Banniger's ("Banniger") motion to amend his compliant (Doc. 23), Medical Defendants'[1] motion to consolidate this case with Docket No. 3:25-cv-00530-KM-EW (Doc. 24), Medical Defendants' motion to dismiss the complaint for failure to state a claim (Doc. 26), the DOC Defendants'[2] motion to dismiss the complaint for failure to state a claim (Doc. 28), Banniger's motion to appoint counsel (Doc. 46), and Banniger's three motions requesting a conference call (Doc. 53; Doc. 54; Doc. 55). The Court will withdraw the motion to amend the complaint as requested by Banniger, grant both sets of Defendants' motions to dismiss to the complaint, dismiss the complaint without prejudice, deny the Medical Defendants' motion to consolidate the cases as moot, deny Banniger's motion for appointment of counsel without prejudice, and deny Banniger's motions for a

---

[1] Defendants Talasky, Delbianco, Dancha, Baddick, Maret, Mascari, Malhi, Mummey, and Smith are collectively known as the "Medical Defendants." (Doc. 26).

[2] Defendants Brittain, Eckert, Herb, Kephart, McCorkle, Quercia, and Rivello are employed by the Department of Corrections ("DOC") and are collectively known as "DOC Defendants." (Doc. 28).

status conference as moot. The Court will allow Banniger the opportunity to file an amended complaint in this action.

## I. BACKGROUND AND PROCEDURAL HISTORY

Banniger, an inmate currently housed at the State Correctional Institution Frackville ("SCI-Frackville"), initiated this action by filing a complaint that was received and docketed by this Court on March 24, 2025 raising multiple claims under 42 U.S.C. § 1983. (Doc. 1). The complaint names the following seventeen defendants: (1) Jacklyn Talasky ("Talasky"), PA; (2) Paul Delbianco ("Delbianco"), M.D.; (3) Gabrielle Nalley ("Nalley"), PAC; (4) Andrew Dancho ("Dancho"), doctor; (5) Bernard Maret ("Meret"), M.D.; (6) Mark Mascari ("Mascari"), physician; (7) Peter Baddick ("Baddick"), M.D.; (8) Kyle Mummey ("Mummy"), doctor's assistant; (9) Raiender Malhi ("Malhi"), doctor; (10) S. Kephart ("Kephart"), DSFM; (11) M. Edckert ("Edckert"), DSCS; (12) K. Brittain ("Brittain"), Warden (Facility Manager); (13) S. McCorkie ("McCorkie"), CHCA; (14) Lisa Quercia ("Quercia"), RNS; (15) Beth Herb ("Herb"), CHCA; (16) J. Rivello ("Rivello"), Warden (Facility Manager); and (17) Gabby Smith ("Smith"). (Doc. 1, pp. 3–7).

On September 5, 2025, the Court received and docketed Banniger's motion to amend his complaint in order to name Wellpath, LLC as a defendant and raise claims pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). (Doc. 23). Banniger attached a proposed amended complaint that is significantly shorter and less detailed than the original complaint. (Doc. 23-1).

On September 8, 2025, the Medical Defendants filed a motion to consolidate cases with the case at Docket No. 3:25-cv-00530-KM-EW with a brief in support. (Doc. 24; Doc. 25). The complaint filed in Docket No. 3:25-cv-00530-KM-EW mirrors Banniger's claims of

deliberate indifference to a serious medical need but focuses on his feet rather than his head. *Banniger v. Delbianco*, No. 3:25-cv-00530-KM-EW, Doc. 1 (M.D. Pa.).

On September 16, 2025, Medical Defendants filed a motion to dismiss for failure to state a claim with a brief in support. (Doc. 26; Doc. 27). The same day, the DOC Defendants filed a motion to dismiss for failure to state a claim. (Doc. 28). The brief in support of their motion was filed on October 14, 2025. (Doc. 34).

On September 30, 2026, the Court entered an order directing Banniger to respond to the pending motion to consolidate cases and address his intentions with the pending motion to amend his complaint considering the motion to consolidate cases. (Doc. 31). Banniger filed a brief in opposition to the motion to consolidate the cases on October 15, 2025. (Doc. 35). In his brief, Banniger requests additional time to file a new amended complaint and requests that the Court withdraw the pending motion to amend his complaint. (Doc. 35).

Banniger filed a brief in opposition to the DOC Defendants' motion to dismiss on November 5, 2025 and a brief in opposition to the Medical Defendants' motion to dismiss on December 8, 2025. (Doc. 36; Doc. 45).

On December 9, 2025, Banniger filed a motion to appoint counsel. (Doc. 46). On May 26, 2026, June 54, 2026, and July 20, 2026 Banniger filed motions for a status conference. (Doc. 53; Doc. 54; Doc. 55).

Because Banniger expressed a desire to withdraw the proposed amended complaint, the Court will deem the motion to amend his complaint as voluntarily withdrawn. The Court will now address all the remaining pending motions.

## II. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also* *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also* *Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III. DISCUSSION

### A. SUMMARY OF THE COMPLAINT

Banniger alleges that in 2021 and 2022, he started putting in sick calls at SCI-Huntingdon describing head pain and right eye twitching associated with a lipoma. (Doc. 1, at 9). He states that in early 2023, an x-ray showed that the lipoma was 2.5 cm or mm, and he was told he would be scheduled for surgery. (Doc. 1, at 9). Banniger states that on September 20, 2023, surgeon Corry Allen Kutruff ("Kutruff") at Blair Surgical Associates removed the lipoma and scheduled him for a follow up on October 12, 2023. (Doc. 1, at 9). He states that on October 2, 2023, the remaining stiches were removed by Defendant Hoffmaster at SCI-Huntingdon. (Doc. 1, at 9). At his follow up with Kutruff on October 12, 2023, he was prescribed a post-operative treatment that included a statement that "if numbness continue for another month refer to neurology." (Doc. 1, at 9). Banniger alleges that Defendant Talasky at SCI-Huntingdon signed the document. (Doc. 1, at 9).

Banniger states that on November 9, 2023, he saw Defendant Nalley at SCI-Huntingdon, and at 1:14 p.m. that same day, Defendants Delbianco and Nalley "denied nurolgy which constitutes my 8th amendment claim of deliberate indifference." (Doc. 1, at 9).

Banniger alleges that on November 21, 2023, he put in a sick call at SCI-Huntingdon complaining of his head and major discomfort. (Doc. 1, at 9). He states he was seen by Defendant Talasky and was told that Defendant Dancha denied a consultation in conflict with his post operation treatment. (Doc. 1, at 9).

Banniger states that on December 1, 2023, he put in a sick call slip at SCI-Huntingdon and was seen by a non-party Nurse Richard Natalie. (Doc. 1, at 9). He states he placed another sick call on February 3, 2023 that was seen by Defendant Nalley. (Doc. 1, at 9). Banniger states that he was given medication that did not work and did not follow his post operation treatment. (Doc. 1, at 9).

Banniger states that he filed a grievance on February 6, 2024 that was rejected. (Doc. 1, at 9). He states that he resubmitted it, but it was rejected and dismissed on February 20, 2024. (Doc. 1, at 9). Banniger states he put in sick calls on March 4, 2024 and March 7, 2024 and received treatment from Defendant Smith who prescribed more nonworking medication. (Doc. 1, at 9). He states he saw Defendant Delbanico on March 19, 2024 complaining about his head but his Eighth Amendment rights were violated. (Doc. 1, at 9). Banniger alleges that on March 25, 2024 he saw Defendant Smith and on April 26, 2024 he saw Defendant Talasky with no help from them "or the medication they keep putting me on." (Doc. 1, at 9).

Banniger states that on May 28, 2024 he saw Defendant Mahi and explained all his medical issues. (Doc. 1, at 9). He alleges that he was prescribed ineffective medication and his rights were violated. (Doc. 1, at 9). On June 19, 2024, July 1, 2024, and July 2, 2024, he

was seen for sick calls for his head and was prescribed more medication. (Doc. 1, at 9). He was told that the DOC denied "nuro for my head." (Doc. 1, at 9). He put in a grievance on July 4, 2024 that was denied or rejected. (Doc. 1, at 9). He resubmitted the grievance on July 9, 2024 "where it got accepted and submitted 7/11 or 12/24 where no Im hoping and needing the jail Sci-Huntingdon and there medical department to fix the issue's Im having with my head." (Doc. 1, at 9).

Banniger alleges that on July 16, 2024 at 6:00 p.m., Defendant Mahi came to the Restricted Housing Unit a couple days after filing his grievance and walked to the door, asked Banniger how he was doing, and walked off. (Doc. 1, at 10). Banniger alleges that an evaluation through a peephole is not a proper assessment or adequate medical care. (Doc. 1, at 10). Banniger states that he was transferred to SCI-Frackville on July 17, 2024 in retaliation for his grievance. (Doc. 1, at 10).

Banniger alleges that on July 20, 2024 or July 21, 2024 he put in a sick call at Sci-Frackville and informed "them" about the pain and issues with his head. (Doc. 1, at 10). Banniger states that he was seen by a doctor on a screen at SCI-Frackville on July 22, 2024., which he believes was Defendant Maret. (Doc. 1, at 10). Banniger alleges that Defendant Maret put in his consultation "but with know regard let the people know how sever the issue's I been complaining about are where she should be held for all the violations listed in claim. Where Mascari Mark denied consultation form Wellpath with know regards for the violations listed in claim and the pain and suffering Im enduring on 7/22/24." (Doc. 1, at 10). Banniger alleges that he wrote to grievance coordinator, Defendant Wakefield, at SCI-Huntingdon seeking the response to the grievance he filed on July 9, 2024. (Doc. 1, at 10). On July 30, 2024, Defendant McCorkie stated he reviewed his medical records but that no relief granted.

(Doc. 1, at 10). Banniger alleges that Defendant McCorkie had the ability to redress his complaints but chose to disregard them. (Doc. 1, at 10).

Banniger alleges that he put in another sick call concerning his head and saw Defendant Baddick at SCI-Frackville on July 29, 2024 who said he would put another "nuro" consultation in and refer him to see an eye doctor. (Doc. 1, at 10). Banniger states that he saw Defendant Baddick again on September 4, 2024 following a sick call slip and Defendant Baddick went over the Alternative Treatment Plain but that the plain had no recommendation "just confirmative measures." (Doc. 1, at 10).

Banniger alleges that he put in an appeal to Defendant Rivello who agreed with Defendant McCorkie "where they conjured up lie's and false accusations to avoid the damage that arose form there violation's in their facility manager response on September 17, 2024." (Doc. 1, at 10). He states that he wrote to Defendant Herb at SCI-Frackville to address the issue of violations in the complaint on August 19, 2024 and August 20, 2024. (Doc. 1, at 10). He alleges that Defendant Quercia responded back with false and misleading medical treatment. (Doc. 1, at 10). He states he wrote to Defendant Herb again on September 19, 2024 and October 10, 2024 and was answered on September 23, 2024 and October 21, 2024 with no regard for his health and the violations of the jail and doctors and kept talking about the Alternative Treatment Plan. (Doc. 1, at 10). Banniger alleges there is no plan in place. (Doc. 1, at 10). Banniger states that on September 25, 2024 and October 16, 2024, he spoke with Defendant Kephart about his medical issues and gave him copes of his complaint. (Doc. 1, at 10).

Banniger alleges that on September 12, 2024, he was prescribed tinted glasses by eye doctor David Bryden that he now wears as a result of the alleged Eighth Amendment

violations. (Doc. 1, at 11). He alleges that he is losing sight in the right eye. (Doc. 1, at 11). Banniger alleges that he saw the eye doctor again on December 12, 2024 and was prescribed regular glasses "from nurologist issue's which stem's from surgery where I'm at Sci-Frackville and everyone I talk to has disregard for my issue's to follow my prescribed post operation treatment, but has enough regard to give me medication that's ineffective for the issue's I'm severely enduring." (Doc. 1, at 11).

Banniger alleges that on October 1, 2024 and October 10, 2024, he saw Defendant Mummey at SCI-Frackville complaining about pain and loss of eye sight. (Doc. 1, at 11). He states that Defendant Mummey told him that the consultation was denied on September 16, 2024 by Defendant Muscari and tried to prescribe medication that he was already taking and he knew was not effective. (Doc. 1, at 11).

Banniger alleges that on October 2, 2024, he appealed the decision of the facility manager's response of September 17, 2024 to final review. (Doc. 1, at 11). On November 5, 2024, he received a response stating that he had not filed the required copies of documents. (Doc. 1, at 11). He states that the final appeal was dismissed. (Doc. 1, at 11).

Banniger alleges that he filed a grievance on August 26, 2024 and did not get a response back until October 9, 2024 from Defendants Kephart and Eckert stating inaccurate less efficient treatment. (Doc. 1, at 11). Banniger alleges that he appealed on October 16, 2024 and received the response from Defendant Brittain on October 28, 2024 agreeing with Defendants Kephart and Eckert. (Doc. 1, at 11). Banniger alleges that he appealed the denial to a final review on October 28, 2024, which was denied for not sending a copy of the initial grievance. (Doc. 1, at 11).

Based on these occasionally unclear alleged facts, Banniger raises Eighth Amendment claims and a retaliation claim. (Doc. 1, at 12).

B. THE MEDICAL DEFENDANTS' MOTION TO DISMISS

**1. Eighth Amendment Claims**

The Medical Defendants challenge all Eighth Amendment claims raised against them based on the fact that Banniger always received treatment when it was requested. (Doc. 27, at 9-14).

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle*, 429 U.S. at 104-05. To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted). A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

However, "[p]rison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Byrd v. Shannon*, No. 1:09-CV-1551, 2010 WL 5889519, at *4 (M.D. Pa. Nov. 24, 2010) (quoting *Inmates of Allegheny County Jail v. Pierce,* 612

F.2d 754, 762 (3d Cir.1979)). Mere disagreement over proper treatment does not state a claim upon which relief can be granted. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *Monmouth Cty. Corr. Inst'l Inmates,* 834 F.2d at 346 ("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation.").

In the alleged facts, each time Banniger requested treatment, he was seen by a provider and often given medication. He highlights the fact that his request for a neurological consultation was repeatedly denied, but he does not allege that medical treatment itself was denied. He also disagrees with the repeated prescribing of medication, alleging that it did not work. Banniger's allegations amount to a disagreement with the medical treatment he received at SCI-Huntingdon and SCI-Frackville, but disagreement with medical treatment does not rise to the level of an Eighth Amendment violation. *White*, 897 F.2d at 110. Therefore, the Court will grant Medical Defendant's motion and dismiss the Eighth Amendment claims.

**2. Retaliation Claim**

The Medical Defendants challenge Banniger's retaliation claim based on a lack of alleged facts. (Doc. 27, at 14-16).

It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts. *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015). A prisoner asserting a retaliation claim under the First Amendment must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional

rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment. *Fantone*, 780 F.3d at 191.

In the complaint, Banniger simply alleged that he was transferred to SCI-Frackville in retaliation for filing grievances. (Doc. 1). In doing so, Banniger has not alleged who the grievances named or who directed his transfer. This Court has repeatedly refused to find a causal connection when the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally protected activity. *See Calloway v. Bauman*, No. 2:20-cv-2337, 2022 WL 4357468, at *9 (M.D. Pa. Sep. 20, 2022) *citing Victor v. Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F. App'x 126 (3d Cir. 2014); *also citing Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others."); *also citing Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity). Therefore, Banniger cannot establish the element of causation required to establish a retaliation claim and the claim will be dismissed.

### C. THE DOC DEFENDANTS' MOTION TO DISMISS

The DOC Defendants seek dismissal of the Eighth Amendment and retaliation claims against them based on a lack of personal involvement. (Doc. 34).

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or

immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).

**1. Eighth Amendment Claims**

As to the Eighth Amendment claims, all of Banniger's allegations surround complaints he made to supervisors about medical treatment he was receiving or concern the responses made to his written grievances. (Doc. 1).

The Third Circuit has stated that "[p]rison officials who are not physicians are entitled to defer to the medical judgment of staff physicians, *see Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993), and an administrator does not become responsible for the inmate's medical treatment simply by virtue of reviewing an inmate grievance." *Smith v. O'Boyle*, 251 Fed. Appx 87, 89 (3d Cir. 2007). "Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement." *Rode v. Dellarciprete,*845 F.2d 1195, 1208 (3d Cir. 1988) (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *see also Brooks v. Beard*, No. 05-3196, 2006 WL 332547, 167 F. App'x 923, 925 (3d Cir. Feb. 14, 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct). Therefore, the Eight Amendment claims against the DOC Defendants will be dismissed.

**2. Retaliation Claim**

The DOC Defendants challenge Banniger's retaliation claim based on a lack of the facts to establish causation. (Doc. 24, at 17-24). The lack of causation is addressed above and is the same claim raised against Medical Defendants. *See supra*. For the same rationale, the Court will dismiss the retaliation claim raised against the DOC Defendants.

D. <u>REMAINING MOTIONS</u>

Since the Court will dismiss the complaint in this matter, there is no current operative complaint rending several of the remaining motions moot. The Court will deny the motion to consolidate this case with Docket No. 3:25-cv-00530-KM-EW and Banniger's motion for a status conference as moot.

Similarly, the Court will dismiss the motions for appointment of counsel. Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the court has discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019). The appointment of counsel is a privilege, not a statutory or constitutional right. *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances after a finding that the plaintiff's case has arguable merit in fact and law. *Tabron*, 6 F.3d at 155. If the court finds that the plaintiff has crossed this threshold inquiry, the court should consider the following factors in deciding whether to request a lawyer to represent an indigent plaintiff:

(1) the plaintiff's ability to present his or her own case;

(2) the complexity of the legal issues;

(3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;

(4) the plaintiff's ability to retain counsel on his or her own behalf;

(5) the extent to which a case is likely to turn on credibility determinations, and;

(6) whether the case will require the testimony of expert witnesses.

*Tabron*, 6 F.3d at 155-57.

This list of factors is non-exhaustive, and no single factor is determinative. *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Parham v. Johnson*, 126 F.3d 454, 458 (3d Cir. 1997)). Instead, these factors serve as guideposts for the district courts to ensure that the precious commodity of volunteer attorney time is not "wasted on frivolous cases." *Montgomery*, 294 F.3d at 499.

Without an operative complaint in this matter, Banniger cannot make a threshold showing for appointment of counsel, and his motions will be denied without prejudice.

The Court will grant Banniger the opportunity to file an amended complaint curing the pleading defects set forth above.

## IV. CONCLUSION

For the above stated reasons, the Court will withdraw Banniger's motion to amend his complaint in line with his request and will grant all Defendants' motions to dismiss the complaint. The Court will dismiss the complaint in this matter, but grant Banniger leave to file an amended complaint curing the above pleading defects. Any amended complaint will be titled "Amended Complaint" and filed in the above captioned action. A failure to file an amended complaint will result in the Court dismissing the complaint with prejudice and closing the case. The Court will deny Medical Defendants' motion to consolidate this action with Docket No. 3:25-cv-00530-KM-EW and Banniger's motions for a status conference as

moot. Additionally, the Court will dismiss Banniger's motions for appointment of counsel without prejudice.

An appropriate order follows.

**Dated: August 14, 2026**

s/ Karoline Mehalchick
**KAROLINE MEHALCHICK**
**United States District Judge**